MASON v. HULBERT.   (No. 6-23.)

(Supreme Court, Appellate Division, Third Department.   March 3, 1915.)

WORK AND LABOR (§ 28*)—SUFFICIENCY OF EVIDENCE—CONTRACT FOR PERSONAL SERVICES.

In an action for the amount due for services in caring for and nursing defendant's father at defendant's request and on his promise to pay therefor at the rate of $15 per week, evidence *held* insufficient to establish the alleged contract.

[Ed. Note.—For. other cases, see Work and Labor, Cent. Dig. §§ 17, 55; Dec. Dig. § 28.*]

Appeal from Trial Term, Ulster County.

Action by C. Mabel Mason against Burton D. Hulbert, with counterclaim by defendant. From a judgment for plaintiff, and an order denying his motion for a new trial, defendant appeals. Judgment and order reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Van Etten & Cook, of Kingston (Andrew J. Cook, of Kingston, of counsel), for appellant.

Brinnier & Canfield, of Kingston (William D. Brinnier, of Kingston, of counsel), for respondent.

WOODWARD, J.   The complaint alleges that:

"The defendant is indebted to the plaintiff in the sum of $555, being for services rendered by the plaintiff for the defendant from January 1, 1910, to September 17, 1910, in caring for and nursing the father of said defendant, one D. C. Hulbert, at the instance and request of the..defendant, and defendant promised and agreed to pay plaintiff $15 per week for such care and nursing of defendant's father, D. C. Hulbert," and that no part of the same has been paid.

The answer denied each and every allegation of the complaint, and set up as a defense to the complaint that the father of the defendant boarded in the family of the plaintiff under an express agreement made by the defendant with Mrs. William H. Mason, the mother of the plaintiff, whereby she was to furnish board, lodging, and attendance for the defendant's father for $5 per week; that the said family consisted of Mrs. William H. Mason, Sadie Maben, C. Mabel Mason, the plaintiff, and one child, besides the father of defendant; that C. Mabel Mason, the plaintiff, was a sister-in-law of defendant, and resided with the mother-in-law of defendant, the said Mrs. William H. Mason; that during the six years last past the defendant has paid the living expenses, including the rent, doctor's services, coal, provisions, clothing, and other necessaries of life of the said Mrs. William H. Mason and her said family, including the plaintiff, to the amount of at least $1,500, and in addition thereto has given to his said mother-in-law and her family, including the plaintiff, the household effects of his said father, of the value of at least $100. As a second defense defendant alleges that he has paid the plaintiff in full for the board, maintenance, and attendance, and for all services rendered to his father during the time

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

referred to in the complaint, and during all the time his said father boarded in the family of which the plaintiff was a member. The defendant then sets up a counterclaim, alleging that the plaintiff owes him a sum in excess of $555 for moneys had and received from the defendant within six years last past, and under the charge of the learned court the jury has allowed the defendant some 'part of the counterclaim; the verdict being for $370. The defendant appeals from the judgment and order denying a new trial.

There was no dispute upon the trial that the defendant, who was the son-in-law of Mrs. William H. Mason, entered into an agreement with the latter for the board and care of the defendant's father at $5 per week. Mrs. Mason appears to have been the head of the household, and there was evidence in the case indicating that the defendant had for a number of years been one of the chief sources of support for the family of Mrs. Mason. Defendant's father was past 80 years of age, and it became necessary for the defendant to make a change in the boarding place of the father. Mrs. Mason said to him that, as he (the defendant) was paying a large part of her family expenses, why not let the father board with her; that the $5 a week he would have to pay elsewhere would not only keep him, but would help to keep the family. The defendant claims that with the acquiescence of the plaintiff this arrangement was entered into, and it is not disputed that the defendant has paid all that he was under obligation to pay under this contract for the board and maintenance of his father.

But the plaintiff claims that on the 1st day of January, 1910, she complained to the defendant that the father was growing old, was an increasing care, and that the defendant thereupon promised to pay her $15 per week for caring for the old gentleman, and that she performed services for the latter until his death in September, 1910, for which she never made any demand, so far as appears, until nearly two years after the death of defendant's father, and then only through her attorney. There is very little relevant testimony in the case outside of that furnished by the plaintiff and defendant. There was some testimony to the effect that Mrs. Mason and the plaintiff had made declarations to the effect that they did not know what would have befallen them if it had not been for the aid coming through the defendant in paying for his father's board, etc., but upon the material issue of whether the defendant had employed the plaintiff at $15 per week there was practically no direct evidence outside of that furnished by the plaintiff's own testimony in the affirmative, squarely contradicted by that of the defendant. Ordinarily, of course, the verdict of a jury upon such a condition of the evidence would not be disturbed, but the facts and circumstances brought out in the trial make the plaintiff's story so inherently improbable that it seems to us that considerations of justice require that this case should be sent to another jury.

This transaction is alleged to have occurred in a small city. The family of Mrs. Mason were very poor, and had to be helped by the defendant and his wife. Mrs. Mason appears to have been the head of the household, and no reason is suggested why she was not competent

to contract for the care and maintenance of defendant's father. The latter came to the home at the suggestion of Mrs. Mason, under an agreement on the part of the defendant to pay $5 per week for his care, and yet we are asked to believe that with this contract in existence, and with no complaint on the part of Mrs. Mason, the defendant, on the complaint of the plaintiff, agreed to increase the cost of maintenance 300 per cent. without in any manner, so far as appears from the evidence, increasing the comfort and well-being of the father. According to the plaintiff's own testimony she was very poor; she was going out washing and doing whatever work she could find to do in that locality. She was not shown to be a trained nurse, or to have any special qualifications for caring for the old gentleman. The evidence is to the effect that, while the old gentleman was feeble, he was up and around the house, and walked two or three blocks to the doctor's office without assistance, down to within a short time before his death; and, while there is some suggestion that he was unable to control his evacuations, there is no evidence to show that this was the condition existing at the time of this alleged contract. Fifteen dollars per week in a small city is rather a large compensation for a woman who is accustomed to earning a livelihood by working out at washing and that character of work, and when we reflect that this is in addition to the contract price for the maintenance of the father, and that there is no evidence that the old gentleman received any other attentions than he would have been entitled to under the contract with Mrs. Mason, it requires a degree of credulity not yet developed in this court to accept as conclusive the verdict of a single jury upon this issue.

It may be that the defendant made this contract, which the plaintiff does not appear to have asserted for nearly two years after the death of the defendant's father; but the contention is not supported by a fair preponderance of evidence, because the probabilities are against it. The claim of the plaintiff that she failed to assert this claim seasonably because the defendant had told her that he would pay after his father's death, and after the estate was settled, would have greater weight if it appeared that the defendant's father left an estate to be settled. The evidence seems to indicate that whatever the defendant's father had—if he had anything—was turned over to the defendant long before his death. Indeed, the defendant appears to have been the only financial foundation of the family, and the plaintiff, knowing that the defendant's father had given whatever he had to the defendant, can hardly be heard to say that she was depending for her recompense upon the avails of an estate which had no existence in fact. There is no evidence whatever that the defendant was not as well able to pay the alleged contract price of these special services during the lifetime of his father, or immediately after his death, as he is to-day, with the exception of the testimony of the plaintiff that the defendant gave as his reason for not paying her at the time that he did not have the money.

But all these things are denied by the defendant. He shows, and is not disputed in this, that he paid the contract price agreed upon with Mrs. Mason down to the time of his father's death, and the plaintiff

does not claim to have asked for or received a single cent of this comparatively large sum of money for one in her circumstances, and the claim does not appear to have been asserted by her until after she had employed an attorney, who made the claim in her behalf nearly two years after the death of defendant's father. It hardly seems probable that a woman with a child on her hands to support would have remained passive for this length of time, going out doing washings and such odd jobs as she could pick up, if a solvent person owed her over $500. That is not the usual thing, and it is easy to read between the lines a situation in the family group which might suggest that a claim of this character could be successfully asserted against the defendant, without the necessity of going into court, and which may be at the foundation of this alleged claim.

Considering the conceded fact that the defendant has long been helping the plaintiff's mother, with whom the plaintiff has been living, and that it is conceded that the defendant has done all that he agreed to do, in so far as his contract with the mother is concerned, and which involved, so far as appears, all of the care which was ever bestowed upon defendant's father—for the plaintiff's testimony that she cared for the old gentleman like a baby is hardly evidence of the performance of any special services beyond boarding and maintaining him— it requires evidence of strong probative force to fairly establish that the defendant entered into a new contract with the plaintiff, by the terms of which he increased his fixed charges in behalf of his father 300 per cent., without any limit of time. The defendant was a merchant at Pine Hill; he conducted the store, with his wife's help during the summer only. It is fair to presume that he was not a wealthy man, and the addition of $15 per week to his fixed charges would be a matter of some consideration; but the plaintiff's testimony is merely to the effect that she made some representations to the defendant that his father was old and an increasing care, and, without any discussion of the matter, he promptly promised to pay her $15 per week extra. A man who had been paying $5 a week for his father's support, and which he was paying to the plaintiff's mother upon her representation that it would help to keep her own family, suddenly develops a streak of extravagance and promises to pay three times as much, in addition to what he is already paying. There is no showing that the condition warranted any such increase in expenditure, or that there was any material change in the condition of the old gentleman from that which had existed the year before, and the evidence is undisputed that the old gentleman continued to be up and around, going out to the doctor's office and to church, down to within a short time of his death.

The case looks upon the face of it more like an effort to induce the defendant to settle than a legitimate effort to collect upon a contract. A man, with a jealous wife to take into consideration, may sometimes be induced to do things which he would not otherwise do; and, if this was not the moving cause for this lawsuit, the internal evidence to be found in the record is singularly misleading.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.